IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANGELA V. WOODHULL,

     Plaintiff,

v.                                                   CASE NO. 1:15-cv-280-MW-GRJ

SHIRLEY MASCARELLA, et al.,

     Defendants.

_____/

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff initiated this case in December 2015 by filing a *pro se* civil rights complaint and a motion to proceed *in forma pauperis*.  (ECF Nos. 1 & 2.)  This case was consolidated with a similar case Plaintiff had initiated in the Western District of Missouri, after the Missouri case was transferred to this district.  Upon review of Plaintiff's pending motion to proceed *in forma pauperis,* the Court finds that the motion is due to be granted.  Because Plaintiff is proceeding *in forma pauperis* the Court is required to screen the case under 28 U.S.C. § 1915.

Based upon the arguments filed by each of the parties, the undersigned concludes that this case is due to be dismissed for lack of subject matter jurisdiction and as precluded by the state court judgment.

## I. Background

The background of Plaintiff's claims, as disclosed in the exhibits filed by the parties, discloses the following events.

Plaintiff, Angela V. Woodhull ("Woodhull"), is the daughter and only child of Louise A. Falvo, who died on July 8, 2008.  Defendant Shirley Mascarella ("Mascarella") is a Ms. Falvo's niece, and is the representative and main beneficiary of Ms. Falvo's estate.  Mascarella lives in Mahoning County, Ohio.

Woodhull challenges orders issued by Judge Toby S. Monaco and Judge Victor Huslander, Circuit Court Judges of the Eighth Judicial Circuit in and for Alachua County, Florida in the matter of Ms. Falvo's probate estate.

Following an evidentiary hearing, Judge Huslander issued a final judgment on December 31, 2012, proclaiming that a March 22, 2008 will executed by Ms. Falvo was procured by the undue influence of Woodhull and therefore was not valid.  The state probate court determined that Ms. Falvo's valid will was executed on February 14, 2008, naming Mascarella as personal representative for Ms. Falvo's estate.  *See* Case No. 1:16-cv-15-MP-GRJ, ECF No. 14 at 15-19 ("December 31 Final Judgment").

Judge Monaco—who was assigned to the case after Judge Huslander— issued an order determining which of Ms. Falvo's assets would pass through the probate estate.  Mascarella and Woodhull disputed whether assets in a Bank of America account and in a Wachovia Bank account were part of Ms. Falvo's estate.  Mascarella contended that the funds in these accounts (totaling $265,819.66), were assets of the estate, while Woodhull argued that the accounts were designated either "in trust for" or "payable on death" ("ITF/POD") to Woodhull and thus the funds should pass to Woodhull outside of probate.  Judge Monaco ruled that the Bank of America account designations— which were changed from Mascarella to Woodhull in March of 2008— were procured by undue influence and therefore were void.  Consequently, Judge Monaco concluded that the assets in the Bank of America account were part of Ms. Falvo's estate.

With respect to the Wachovia account, Judge Monaco found that the evidence showed that Ms. Falvo intended Woodhull to receive the money in the Wachovia account outside of probate, and thus the "in trust for" and "payable on death" designations on the Wachovia account were consistent with Ms. Falvo's intent.  In accordance with these findings, Judge Monaco

designated the funds from the Bank of America accounts to be part of Ms. Falvo's estate and directed the funds from the Wachovia Bank account distributed to Woodhull after the funds were separated properly from the remaining assets.  ("August 2 order.")

In March 2015, the total assets currently in front of the state probate court were valued at $266,237.42.  After payment to the curator of $25,106.19 for ordinary services and $2,250.00 for extraordinary services, and taking into account costs of $7,738.95 paid previously, the remaining sum in the probate estate was $243,381.23.

Although Judge Monaco had determined that the Bank of America funds were part of Ms. Falvo's estate and the Wachovia funds were not subject to probate, determining the amount of funds allotted to each account was extremely difficult because the funds previously had been transferred and commingled into different guardianship accounts.

Judge Monaco then entered an order that Woodhull challenged there and has continued to challenge in this and other litigation. Judge Monaco determined that the attorney's fees incurred during the guardianship were "greatly increased by virtue of the extremely litigious nature of the proceedings which was caused almost in whole by [Woodhull] who has

been found to have instituted such proceedings in bad faith in an attempt to control Falvo and her money."  Consequently, because the attorney's fees the estate was caused to expend because of the legal challenges raised by Woodhull significantly decreased the amount of Ms. Falvo's assets, Judge Monaco ruled that none of the funds in the probate estate could be identified and segregated as funds from the Wachovia accounts, either because the funds had lost their ITF/POD character before Ms. Falvo's death, or because the funds had been expended by Woodhull during the litigation.  Woodhull challenged Judge Monaco's ruling and on appeal the First District Court of Appeal affirmed Judge Monaco's ruling *per curiam.*    Case No. 1:16-cv-15-MP-GRJ, ECF No. 14 at 28-36 ("March 20 order").

In the case pending before this Court Woodhull has named as defendants, Mascarella, Judge Monaco, Richard C. Scott (Governor of the State of Florida), the State of Florida, the Eighth Judicial Circuit Court, and the First District Court of Appeal.  Woodhull requests the Court to enter a temporary restraining order and preliminary injunction against Ms. Falvo's estate and against Mascarella.  Woodhull says that the actions taken by Defendants in distributing the assets of the estate violate the takings

clause of the Fifth Amendment and the due process clause of the

Fourteenth Amendment.

## II. Standard of Review

The screening process under 28 U.S.C. §1915 applies to non-

prisoner *pro se* litigants who are proceeding *in forma pauperis*.  *Boyington*

*v. Geo Group, Inc*.,  2009 WL 3157642 (M.D. Fla. Sept. 25, 2009), *citing*

*Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (dismissals under 28

U.S.C. § 1915 apply to non-prisoners, even if fee assessment provisions

do not).

A court may *sua sponte* dismiss a case proceeding *in forma pauperis*

if the complaint fails to state a claim upon which relief may be granted.  28

U.S.C § 1915(e)(2).  The complaint's [f]actual allegations must be enough

to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007).  "The Supreme Court's most recent

formulation of the pleading specificity standard is that 'stating such a claim

requires a complaint with enough factual matter (taken as true) to suggest'

the required element."  *Watts v. Florida International University*, 495 F.3d

1289, 1295 (11th Cir. 2007).  This standard simply calls for enough facts to

raise a reasonable expectation that discovery will reveal evidence of the

required element. *Twombly*, at 1965.  In reviewing the complaint, this Court accepts allegations in the complaint as true, and *pro se* pleadings are liberally construed. *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004).

In addition to screening the complaint to determine whether the complaint state a cause of action the Court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking. *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985)(per curiam). Federal courts are courts of limited jurisdiction that possess only that power authorized by the Constitution and federal statutes.  *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 692 (1986).   A plaintiff invoking the court's jurisdiction must establish the basis for such jurisdiction in the complaint.  *See Taylor  v. Appleton*, 30 F.3rd 1365, 1367 (11th Cir. 1994).  Under 28 U.S.C. § 1332(a)(1), the Court has jurisdiction over cases where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.  Further, the Court has subject matter jurisdiction over cases involving a federal question.   *See Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004).

If a federal court determines that it lacks subject matter jurisdiction,

the court is powerless to continue.  *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999).  Upon finding a lack of jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. 506 (1868).

### III. Discussion

After Woodhull initiated a similar case in the Western District of Missouri (and before that case was transferred here) the District Judge in the Western District of Missouri case ordered the parties to brief the issue of whether the court had subject matter jurisdiction over Plaintiff's claims.  Woodhull, Mascarella and the other Defendants there filed briefs addressing jurisdiction.  The Missouri case was consolidated into this case in January 2015.

Federal courts are courts of limited jurisdiction that possess only that power authorized by the Constitution and federal statutes.  *See, e.g., Van Arsdall*, 475 U.S. at 692.   A plaintiff invoking the court's jurisdiction must establish the basis for such jurisdiction in the complaint.  *See Taylor*, 30 F.3rd at 1367.  Under 28 U.S.C. § 1332(a)(1), the Court has jurisdiction over cases where there is complete diversity of citizenship among the

parties and the amount in controversy exceeds $75,000.  Further, the Court has subject matter jurisdiction over cases involving a federal question.   *See Cadet*, 377 F.3d at 1179.

Woodhull seeks to invoke this Court's jurisdiction, claiming that this case involves a federal question because she seeks to have this Court declare unconstitutional the Florida Statutes applied in the state probate case (particularly Chapters 732 and 744), and claiming that the practice of affirming appeals *per curiam* by Florida's intermediate appellate courts is unconstitutional.

Defendants argue that the Court should dismiss this case because the *Rooker-Feldman* doctrine bars Plaintiff's claims in federal court. Woodhull asserts that her claims are not barred by the *Rooker-Feldman* and *Younger* abstention doctrines and that these doctrines are unconstitutional.

The *Rooker-Feldman* doctrine arises from two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The theory underlying the doctrine was that only the United States Supreme Court has jurisdiction to review a state-court decision.  18B Charles Allen Wright and

Arthur R. Miller, Federal Practice and Procedure § 4469.1 (2d ed.) The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v Attorney Gen. For Fla.,* 679 F. 3d 1257, 1262 (11th Cir. 2012).

The Supreme Court addressed the limits of the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 554 U.S. 280 (2005).  The Court explained that "*Rooker-Feldman* . . . is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Exxon Mobil*, 554 U.S. at 284.

The *Rooker-Feldman* doctrine applies to both federal claims raised in state court and to those "inextricably intertwined" with the state court judgment.  *Feldman*, 460 U.S. at 482 n. 16.  A claim is inextricably intertwined if it would "effectively nullify" the state court judgment or it "succeeds only to the extent that the state court wrongly decided the issue before it."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987); *Liedel v. Juvenile Court of Madison County*, 891 F.2d 1542, 1545 (11th Cir. 1990); *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

Furthermore, a plaintiff in federal court cannot attempt to disguise an appeal from a state court judgment by raising a new constitutional theory in federal court.  *Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir. 1992).

In her Complaint Woodhull purports to raise the following constitutional challenges. She argues that:

(1) Chapter 732 of the Florida Statutes (the probate code) is unconstitutional as a violation of the takings clause and the due process clause;

(2) Chapter 744 of the Florida Statutes (the guardianship provisions) is unconstitutional as a violation of the takings clause and the due process clause;

(3) per *curiam affirmances, as authorized under Fla. Const. V, §3(b)(*3) and Fla.  R. App. P. 9.030(a)(2), are unconstitutional as a violation of the equal protection clause and the due process clause;

(4) the *Rooker-Feldman* doctrine is unconstitutional as a violation of separation of powers, equal protection, and due process; and

(5) the *Younger* abstention doctrine is unconstitutional as a violation of separation of powers, equal protection, and due process.

While Woodhull says that these constitutional challenges are the focus of her Complaint, it is more than evident that the real purpose of her complaint is to challenge the rulings of the state probate court in the Falvo estate. The majority of Woodhull's fifty-three page Complaint details the history of the eight-year probate proceedings and the reasons Judge

Monaco and Judge Hulslander's orders are "unsupported by any section of Florida's probate code or other substantive or procedural Florida law."

For example, Woodhull expressly challenges Judge Monaco's March 19, 2015 order (in which he identified the remaining funds as belonging to Ms. Falvo's estate) as contrary to law because the court there did not have "specific jurisdiction" over her.  Woodhull says that the state probate court's August 2, 2013 order was a money-judgment entered without procedural due process.  She further argues that the state probate court's instructions to Ms. Falvo's guardian to close Ms. Falvo's bank accounts were unlawful under Florida probate law and unlawful under the constitution. Woohull also argues that the state probate court's September 22, 2015 order requiring her to post a $250,000 bond to stay distribution of assets was a violation of the takings clause and a violation of the due process clause.

These challenges are inextricably intertwined with the rulings of the state probate court because Woodhull seeks to have this Court overturn the state probate court's decisions based upon arguments that Woodhull could have raised (and should have raised) in the state courts. Instead of doing so Woodhull wants this Court act as an appellate court for the rulings

in the state probate proceedings.  This is precisely what the *Rooker-Feldman* doctrine precludes this Court from doing.

Simply put, this case is a classic case of a state court loser (Woodhull) complaining of injuries caused by a state court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of the state court's judgment.   A federal district court lacks jurisdiction to engage in appellate review of state court proceedings.  *Blue Cross and Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1554 (11th Cir. 1989).

Notably, this is not the first time Woodhull unsuccessfully has attempted to raise claims in federal court pertaining to Ms. Falvo's guardianship and probate proceedings.  In 2013 Woodhull filed a complaint in the Middle District of Florida against Rebecca Fierle (the professional guardian assigned to Ms. Falvo), several state judges, several attorneys and law firms, several banks, and Shirley and John Mascarella.  *Woodhull v. Fierle, et al.*, Case No. 6:13-cv-384-Orl-28KRS (M.D. Fla. 2013). Woodhull's claims, there, concerned Ms. Falvo's guardianship and probate proceedings. In *Fierle* Woodhull claimed a violation of the Fourth Amendment, "tortious interference" with the assets she was due from Ms.

Falvo's estate, common law fraud, breach of contract, and conversion. *Fierle*, ECF No. 1.

The Court in the Middle District of Florida dismissed the *Fierle* case for failure to state a cause of action and for lack of subject matter jurisdiction. ECF No. 57.  On appeal to the Eleventh Circuit (*Woodhull v. Fierle*, Case No. 13-12505 (11th Cir. 2013)) the Court concluded that it did not need to reach the merits of Plaintiff's claims because the *Rooker-Feldman* doctrine barred consideration of Woodhull's claims since Woodhull essentially sought appellate review of the state court proceedings.  Accordingly, the Eleventh Circuit vacated the district court's order with instructions, upon remand, to dismiss Plaintiff's action for lack of subject matter jurisdiction under *Rooker-Feldman*.  *Fierle*, ECF Nos. 62, 64.

That is exactly what Woodhull is doing in this case.  Accordingly, for the same reasons explained by the Eleventh Circuit in *Fierle*, Woodhull's claims in this case must be dismissed under *Rooker-Feldman*.

Woodhull's arguments that *Rooker-Feldman* does not apply here have no merit.  It makes no difference that Woodhull attempts to massage her claims by arguing that her claims are really constitutional challenges to

Florida probate laws, guardianship laws, *per curiam* affirmances, and the *Rooker-Feldman/Younger* abstention doctrines and not challenges to the rulings of the state probate court.

Regardless of her characterization of her claims Woodhull requests the Court to enter a preliminary injunction against the state court order issued on March 19, 2015 (the order identifying remaining funds) until resolution of this case and for the Court to declare the judgments of the state probate court void because the rulings are based upon Florida laws that, Woodull says, are unconstitutional. A declaration from this Court would necessarily void the state court's judgment in the probate proceedings, in direct contravention of the purpose of the *Rooker-Feldman* doctrine.

Application of *Rooker-Feldman* here is also supported by other cases from the Eleventh Circuit.  In *Powell v. Powell.*  80 F.3d 464 (11th Cir. 1996) the Eleventh Circuit addressed a similar challenge to state court proceedings   In *Powell*, a Georgia state court awarded the plaintiff's ex-wife a portion of his naval retirement pay as alimony under the Uniformed Services Former Spouses' Protection Act ("FSPA").  The plaintiff there filed a complaint in federal district court, claiming that the FSPA was

unconstitutional as applied to him because it was an unconstitutional taking

of his property.  The Eleventh Circuit concluded that his constitutional

challenge to the FSPA was "inextricably intertwined" with the issue of

whether the state court could award his ex-wife part of his naval retirement

pay, because if the federal court held in his favor, that holding would

"effectively nullify" the state court's judgment.  *Id*.

The result here is the same. Woodull's constitutional challenges are

"inextricably intertwined" with the state probate court judgments, and thus

Woodhull's claims are barred under the *Rooker-Feldman* doctrine.

In Woodhull's response, filed in the Western District of Missouri, she

argued that the Florida state probate case was still pending when she

initiated the case and therefore under *Exxon Mobil* she was not at that time

a "state-court loser complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced."

The *Rooker-Feldman* doctrine only applies at the conclusion of state

court appeals.  *Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir.

2009)("[W]e agree with our sister circuits. . . and hold that state

proceedings have not ended for the purposes of *Rooker-Feldman* when an

appeal from the state court judgment remains pending at the time the

plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment."). The relevant inquiry, with respect to finality, is whether the state court proceedings have ended when the federal case was initiated. *Id*.

The Eleventh Circuit adopted the First Circuit's three part test for determining whether state court proceedings have ended: (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (2) if the state action has reached a point where neither party seeks further action; and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated. *Nicholson*, 558 F.3d at 1275 (citing *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005)).

Under Florida law, when a district court of appeal renders a *per curiam* affirmance decision without opinion, the decision cannot be reviewed by the Florida Supreme Court. *Jenkins v. State*, 385 So. 2d 1356 (Fla. 1980). Therefore, the issuance of a *per curiam* affirmed decision by a

Florida district court of appeal marks the end of state court proceedings for
*Rooker-Feldman* purposes.

In the state probate proceedings, Woodhull initiated three appeals.
The first appeal was from the final judgment issued December 31, 2012.
The second appeal was from the August 2, 2013 order determining assets
of the estate.  The Florida First District Court of Appeal ("First DCA")
consolidated the two appeals and on October 14, 2014, affirmed both the
December 31 final judgment and the August 2 order.[1]  Case No. 1:16-cv-
15-MP-GRJ, ECF No. 14 at 21-26.

Woodhull also appealed the March 19 order identifying the remaining
funds as assets of the estate.  The First DCA affirmed the order on
November 3, 2015.  Case No. 1:16-cv-15-MP-GRJ, ECF No. 14 at 27-32.
Woodhull initiated the Western District of Missouri federal lawsuit on
October 19, 2015 and filed the complaint in this case in this district on
December 28, 2015.

Woodhull's appeal of the final judgment and the order determining
assets of estate ended on October 14, 2014, when the First DCA issued its

---

[1]Although Mascarella's response identifies the opinion as issuing on October 14,
2015, the date on the opinion evidences that it was issued October 14, 2014.  Case No.
1:16-cv-15-MP-GRJ, ECF No. 14 at 21-26.  Regardless, either date is before the
initiation of the federal proceedings, and so neither date would change the analysis
under *Rooker-Feldman*.

*per curiam* affirmed decision.  This decision was final *before* Woodhull

initiated the case in either this district or in the Western District of Missouri.

Consequently, for purposes of finality under *Rooker-Feldman* the state

court judgment was final at the time Woodhull initiated this case.

Woodhull's appeal of the March 19 order, determining assets of the

estate, was final on November 3, 2015, when the First DCA issued a *per*

*curiam* affirmed decision.  In accordance with Woodhull's request the

Western District of Missouri case was consolidated with this case in the

Northern District of Florida so that the operative complaint is the complaint

Woodhull filed on December 28, 2015.  Because the Fist DCA's *per curium*

affirmance of the March 19 state court probate order was final prior to

Woodhull's initiation of this  case on December 28, 2015, the *Rooker-*

*Feldman* doctrine applies.

Assuming alternatively that the complaint filed on October 19, 2015

in the Western District of Missouri controls so that the state court

proceedings were still ongoing at the time Plaintiff initiated federal litigation,

this Court is still barred from reviewing Woodhull's claims.  While the Court

in that scenario is not divested of jurisdiction by the *Rooker-Feldman*

doctrine, once the state proceedings are complete, preclusion law governs

the federal action.  *Nicholson*, 558 F.3d at 1273-74.  The Full Faith and

Credit Act, 28 U.S.C. § 1738, requires this Court to "give the same

preclusive effect to a state-court judgment as another court of that State

would give."  *Exxon Mobil*, 544 U.S. at 293 (quoting *Parsons Steel, Inc. v.*

*First Alabama Bank*, 474 U.S. 518, 523 (1986)).  While preclusion is not a

jurisdictional matter, this Court nevertheless would be required to

recognize the preclusive effects of the state-court judgment.

The state probate proceedings concluded on November 3, 2015,

when the First DCA *per curiam* affirmed Judge Monaco's March 19 order

identifying the remaining funds.  In the event that *Rooker-Feldman* does

not bar Plaintiff's claims, the Court is nevertheless bound to give preclusive

effect to the state court's judgment.

Accordingly, for the reasons discussed above, this case is due to be

dismissed.[2] This Court lacks subject matter jurisdiction over Woodhull's

constitutional claims under *Rooker-Feldman* because the claims are

---

[2]  In addition to the fact that the Court is precluded from addressing the merits of
this case under *Rooker -Feldman*, Woodhull's claims against Defendants Eighth
Judicial Circuit Court and the First District Court of Appeal, are subject to dismissal
because courts are not considered "juridical persons" subject to suit under §1983.  *See,*
*e.g.*, *Holifield v. City of Mobile Municipal Court of Mobile, AL*, CA No. 07-0309-CG-B,
2009 WL 793516 (S.D. Ala. Mar. 19, 2009)(holding that the City of Mobile Municipal
Court is not considered a "person" subject to suit under §1983); *Foster v. Walsh*, 864
F.2d 416, 418 (6th Cir. 1988)(holding that the court is not a "person" within §1983).

"inextricably intertwined" with the state probate court's judgments and rulings. The state court proceedings were final prior to Woodhull's initiation of this case in the Northern District of Florida.  Alternatively, in the event that the state court proceedings were not final when Woodhull initiated this federal litigation, the Court, nonetheless, would have to give preclusive effect to the state court judgment under the Full Faith and Credit Act, and, therefore, the Court cannot review her claims.[3]

Although the Court is recommending that the case be dismissed, there are several motions for sanctions that remain pending in the consolidated case.  Even though the Court lacks subject matter jurisdiction over Plaintiff's claims, the Court may still impose sanctions.  *Willy v. Coastal Corp.*, 503 U.S. 131 (1992)(holding that imposition of sanctions under Rule 11 may be considered after dismissal for lack of subject matter jurisdiction, because such a determination "does not signify a district court's assessment of the legal merits of the complaint.").   Therefore, the

---

[3] While Defendants also raised *Younger* abstention the Court finds that *Younger* abstention is not appropriate because the state probate proceedings have concluded. The Supreme Court has announced three factors in determining the applicability of *Younger* abstention: (1) do the proceedings constitute an ongoing state proceeding; (2) do the proceedings implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges.  *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432-35 (1982).  Plaintiff's federal complaint was filed on December 28, 2015, which was after the state proceedings became final on November 3, 2015.  Therefore, there were no ongoing state proceedings but instead a final state judgment.

Court will issue a separate report and recommendation, addressing

Defendant's and Plaintiff's motion for sanctions.

## IV. Order and Recommendation

Accordingly, it is respectfully **RECOMMENDED** that this case should

be **DISMISSED** for lack of subject matter jurisdiction and as precluded by

the prior state court judgment.  Plaintiff's motion to proceed *in forma*

*pauperis*, ECF No. 2, is **GRANTED.**

**IN CHAMBERS**, at Gainesville, Florida, this 18th day of May 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**